UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CURTIS FLANAGAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-CV-2090-RWS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## MEMORANDUM AND ORDER

Petitioner Curtis Flanagan has filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion"). Flanagan asserts several claims, including that the sentence was imposed in violation of the United States Constitution, that I lacked jurisdiction to impose a sentence, that the sentence was in excess of the statutory maximum, and that there were violations of the Fourth, Fifth, Sixth and Eighth Amendments of the Constitution.

For the reasons set forth below, I will deny Flanagan's motion.

**I. Background**

On April 4, 2013, Curtis Flanagan, also known as Nycere Bey, was indicted in the United States District Court for the Eastern District of Missouri on three counts of violating Title 18, United States Code, Section 915, for falsely assuming and pretending to be a diplomatic consular. On July 18, 2013 Flanagan pleaded guilty to Count I of the indictment. At his plea hearing, Flanagan stated, under oath that he understood the Plea Agreement and everything contained within the Plea Agreement was true. The Plea Agreement set forth the following facts:

On or about September 2012, Flanagan was driving his car in St. Louis County. (Plea Agreement at 3). A St. Louis County Police Department (SLCPD) officer observed that the car did not appear to have a license plate lawfully issued by the State of Missouri or other government

1

entity in the United States. *Id.* The license plate read "Indigenous National Mu'ur Republic 711MA2 Private Sovereign Diplomat Anexem." *Id.* The officer initiated a traffic stop and informed Flanagan why he had stopped him. *Id.* Flanagan identified himself and gave the officer a green identification card, reading "Mecian Indigenous Amu'uricans International Murrican Gansul Nationality, Right to Travel non-obligatory identification card. Private Sovereign with Diplomatic Immunity." *Id.* The card purported to be issued by "Grand Major MHT of S#13. Moorish National" on April 13, 2012 with an expiration date of April 12, 2015. *Id.* The card bore Flanagan's photograph but the identifying information on the card showed his name was "Nycere Bey." *Id.* After the officer requested that Flanagan produce a diplomatic identification card or other paperwork from the United States Department of State to verify his diplomatic status, Flanagan stated that he did not need to produce such paperwork, claiming to be a sovereign, "an ancient Mu'ur," with "full diplomatic immunity." *Id.* Flanagan claimed that stopping him was a violation of the peace treaty between the "Corporation of the United States and Morocco." *Id.* at 4.

After running a record check and finding no results under the name "Nycere Bey," the officer placed Flanagan under arrest for failing to register a vehicle and driving without a license. *Id.* After being advised of his Constitutional rights, Flanagan stated that he understood his rights and agreed to answer questions. *Id.* Flanagan then stated that his real name was Curtis Flanagan, that he had legally changed his name, and that the change was "on record with the recorder of deeds." *Id.* The officer inventoried Flanagan's car, locating numerous items from the City of St. Louis addressed to Curtis Flanagan, and a check on the name Curtis Flanagan revealed numerous outstanding traffic warrants and a license revocation. *Id.* Flanagan told the officer that he was aware of the arrest warrants and was trying to get them "fixed," but stated "I have immunity. I cannot be charged with a crime." *Id.* Further checks revealed that Flanagan was not, in fact, a diplomatic consular or other official of a foreign government duly accredited as such to the United States. *Id.*

At the plea hearing, Flanagan told me, under oath, that he was satisfied with his counsel's representation. (Plea Hr'g Tr. at 7). Flanagan told me that he had gone over his plea agreement with his attorney and that his attorney had answered all of Flanagan's questions. *Id.* at 9. Flanagan stated that no one had offered him anything or given him anything to induce him to plead guilty. *Id.* at 13. Flanagan stated that he understood that he had the opportunity to plead not guilty and have a trial by jury, and that he knew there would be no trial if he entered a guilty plea. *Id.* at 7-8.

The United States Probation Office prepared a presentence investigation report (PSR). Based on the PSR, Flanagan's total offense level was an 8, and his Criminal History Category was Category II. (Sentencing Hr'g Tr. 3). Based on an offense level of 8 and a Criminal History Category II, the guidelenss recommend a sentence of 4 to10 months incarceration, a period of supervised release of 1 to 3 years, and fine of $1,000 to $10,000. *Id.* In addition, a special assessment of $100 was due at the time of sentencing. *Id.* At the conclusion of the hearing, I sentenced Flanagan to time served and imposed a three year term of supervised release. *Id.* at 6. On September 10, 2013, Flanagan filed with the Court a notice that he was foregoing his right to pursue a direct criminal appeal and that he did not intend to file a Notice of Appeal. (Doc. #48).

Flanagan now claims that the sentence was imposed in violation of the United States Constitution. He also asserts that this Court lacked jurisdiction to impose a sentence or that the sentence was in excess of the statutory maximum. He also asserts violations of the Fourth, Fifth, Sixth and Eighth Amendments to the Constitution.

## II. Grounds for Relief

In his 28 U.S.C. § 2255 motion, Flanagan alleges the following grounds for relief:

1. His sentence was imposed in violation of the Constitution;

2. The Court lacked jurisdiction to impose a sentence, or the sentence was in excess of the statutory minimum because:

3

    (a) he identified himself as a "Moorish American and we claim the treaty of Peace and Friendship of 1787;"
    (b) he preserved his common law rights and avoided submitting to federal jurisdiction by referring to the UCC;

  3. His rights under the Fourth, Fifth, Sixth and Eighth Amendments had been violated because:
    (a) the FBI seized him under an unlawful warrant and unlawful indictment;
    (b) he was unlawfully confined and detained pretrial;
    (c) he was seized without due process; and
    (d) he never received an offer for bail.

**III. Standard for § 2255 Relief**

  "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir.2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post- conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."). A motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson,* 997 F.2d 429, 431 (8th Cir.1993) (quoting *Davis v. United States,* 417U.S. 333, 343 (1974)).

  However, "[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255." *Theus v. United States,* 611 F.3d 441, 449 (8th Cir.2010) (quoting *United States v. Wiley,* 245 F.3d 750, 752 (8th Cir.2001)). One exception arises when there is a "miscarriage of justice," but the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual

innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. *Wiley,* 245 F.3d at 752. "[T]he Court has emphasized the narrowness of the exception and has expressed its desire that it remain rare and available only in the extraordinary case." *Id.* (citations omitted). Section 2255 ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States,* 8 F.3d 1313, 1314 (8th Cir.1993). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States,* 523 U.S. 614, 622 (1998) (citations omitted).

IV. **ANALYSIS**

    A. **Allegations that the Sentence was Imposed in Violation of the Constitution Lack Merit**

Flanagan levies a naked allegation that the sentence was imposed in violation of the Constitution or the laws of the United States, under 28 U.S.C. § 2255. (Petition at 1). He alleges that "Article 1 section 9 states that prisoners who feel their constitutional rights have been violated may use the writ of habeas corpus as their remedy for justice, so I'm using constitutional authority to do so [sic]." (Petition at 2-3). Flanagan argues that, according to 28 U.S.C. § 2255 "any of the said violations make the sentence subject to collateral attacks, and may move the court which imposed the sentence to vacate, set side or correct the sentence." (Petition at 1).

However, since Flanagan waived his right to seek collateral relief under Section 2255 in agreeing to the plea agreement, Flanagan fails to state a claim if 1) the guilty plea and waiver of collateral rights were made knowingly and voluntarily and 2) upholding the waiver will not result in a miscarriage of justice. For reasons set forth below, Flanagan fails to make a valid claim.

        a. **Flanagan's Guilty Plea Was Made Knowingly and Voluntarily**

Flanagan alleges that he was forced to "plead out, under the threat of duress and coercion." (Petition at 3). I construe such to be a claim that he did not voluntarily and knowingly plead guilty. However, this claim is directly contradicted by the Plea Agreement, Flanagan's plea colloquy, and the transcript of his sentencing hearing.

A voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). A defendant may waive the right to seek collateral relief under Section 2255. *Chesney v. United States*, 367 F.3d 1055, 1058 (8th Cir. 2004). Such a waiver is enforceable when the claim falls within the scope of the waiver, the defendant knowingly and voluntarily entered into the plea agreement, and enforcement of the waiver would not result in a miscarriage of justice. *Ackerland v. United States*, 633 F.3d 698, 701 (8th Cir. 2011).

In his Plea Agreement, Flanagan agreed to "waive all rights to contest the conviction … in any post-conviction proceeding, including one pursuant to Title 28 United States Code, § 2255." (Plea Agreement at 7). Furthermore, at the Plea Hearing, I specifically addressed the waiver with Flanagan, wherein the following exchange occurred:

| | |
|---|---|
| Court: | But if I sentence you consistent with the plea agreement you've agreed not to appeal any sentence that's imposed. Do you understand that? |
| Flanagan: | Yes, I understand. |
| Court: | If I sentence you consistent with the plea agreement, you've also agreed not to file any other motions or any other lawsuits challenging how your case has been handled except for a claim you may have for misconduct by the prosecutor or ineffective assistance by your lawyer. |
| Flanagan: | I understand, yes. (Plea Hr'g Tr. at 11). |
| Court: | Has anyone threatened you, forced you, or in any way coerced you into pleading guilty? |
| Flanagan: | No.(Plea Hr'g Tr. At 8-9) |

| | | |
|---|---|---|
| Court: | Do you believe you understand what's in this document? | |
| Flanagan: | Yes, I do. | |
| Court: | Is everything in here true? | |
| Flanagan: | Excuse me? | |
| Court: | Is everything in this document true? | |
| Flanagan: | Yes. (Plea Hr'g Tr. at 9). | |

In addition to assuring that the waiver was knowing and voluntary, I also determined that he was competent, that the plea agreement was explained to him, and that he had a full opportunity to discuss the agreement with counsel and make an informed decision. (Plea Hr'g Tr. at 2-15). Therefore, the Plea Agreement, Flanagan's plea colloquy, and the transcript of his sentencing hearing clearly demonstrate that Flanagan knowingly and voluntarily waived, without any force or coercion, his right to file this motion.

### b. Imposing the Waiver Will Not Result in a Miscarriage of Justice

Additionally, the waiver does not result in a miscarriage of justice. In *United States v. Andis*, 333 F.3rd 886, 891 (8th Cir. 2003), the court stated that "we will still refuse to enforce an otherwise valid waiver if to do so would result in a miscarriage of justice." Although not previously defined, courts have described many of the components of a miscarriage of justice. *Id.* s*ee DeRoo v. United States,* 223 F.3d 919, 923-24 (8th Cir. 2000) (stating that a waiver of appellate rights does not prohibit the appeal of an illegal sentence or a sentence in violation of the terms of an agreement, or a claim asserting ineffective assistance of counsel); *United States v. Michelsen,* 141 F.3d 867, 872 n. 3 (describing the right to appeal an illegal sentence).

Because Flanagan pled guilty to and admitted the charged crime and I imposed a sentence within the advisory guideline range. *Rita v. United States*, 551 U.S. 338, 347 (2007). As a result, there is no miscarriage of justice. Flanagan was advised of the statutory penalties and that the

7

sentence could be different from what was in the Plea Agreement. (Plea Agreement at 6-9). Flanagan was advised of his waiver at the plea hearing. (Plea Hr'g at 4). Finally, the sentence imposed was less than the statutory maximum. Flanagan makes no allegation that there was a defect as to the negotiation of the waiver. For these reasons, Flanagan's challenge to the voluntariness of his plea must fail.

Because Flanagan validly waived his right to bring the claims asserted in this motion, his claims must be denied. However, even if not waived, these claims are meritless for the reasons stated below.

### B. The Court Did Not Lack Jurisdiction to Impose a Sentence or Give a Sentence in Excess of the Statutory Maximum;

#### a. This Court Had Jurisdiction to Impose a Sentence

In his petition, Flanagan alleges that the court was without jurisdiction to impose the sentence or that the sentence was in excess to the statutory maximum authorized by law. He alleges that he had "the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or the sentence was in excess to the maximum authorized by law [sic]." (Petition at 1). "Article 3 sections 2 specifically states what jurisdictions American court[s] are allowed to proceed under and your courts statutory jurisdiction is not one of them, and for the record I'm claiming common law jurisdiction [sic]." (Petition at 3).

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the states, of all offenses against the laws of the United States. 18 U.S.C. § 3231. Pursuant to section 3231, federal district courts possess original jurisdiction over all violations of federal law. *United States v. Hayes*, 574 F.3d 460, 471 (8th Cir. 2009).

Flanagan does not indicate why the District Court lacked jurisdiction to impose a sentence. As identified in the Plea Agreement, Flanagan's criminal conduct occurred within the Eastern

District of Missouri, because he was driving his car in St. Louis County in the Eastern District of Missouri. (Plea Agreement 3). After his arrest, Flanagan was charged with a violation of federal law as the Indictment alleged violations of Title 18 U.S.C. § 915. *See United States v. Trotter*, 478 F.3d 918, 920 (8th Cir. 2007) (defendant charged with an offense against the laws of the United States, established jurisdiction and his motion to dismiss for lack of jurisdiction was properly denied). Moreover, the record establishes that this court had jurisdiction.

Additionally, in the underlying criminal case, Flanagan had an opportunity to challenge the jurisdiction of the Court, yet he failed to do so. Concerning pretrial motions, Fed. Rule Crim. Pro. 12(b)(3) states "the following must be raised before trial: (A) a motion alleging a defect in instituting the prosecution; (B) a motion alleging a defect in the indictment or information – but at any time while the case is pending the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Flanagan initially filed pretrial motions challenging the Court's jurisdiction as well as the charging allegations and the proceedings, but he withdrew the motions an elected not to file any pretrial motions. (Doc. #17, 18, 19, 20, 33, 34). Furthermore, Flanagan affirmatively waived pretrial motions in open Court. Flanagan was subsequently sentenced on September 10, 2013. (Doc. #50). He filed a notice with the court indicating that his counsel had explained his right to appeal and that he had not requested his counsel to file a Notice of Appeal. (Doc. #48). Thereafter, the judgment became final on or about September 24, 2013. There is no legal or factual basis for Flanagan's claim that the court lacked jurisdiction to hear the case.

### i. Moorish America Claims Lack Merit

Furthermore, Flanagan claims that the court lacked jurisdiction because he identified himself as a "Moorish American and we claim the treaty of Peace and Friendship of 1787." (Petition at 3).

9

He further claims that "Article 4 section two specifically says all Americans are entitled to immunity." (Petition at 2).

No court within the Eighth Circuit has directly addressed the issue of the Court's jurisdiction over "Moorish Americans." However, in *United States v. Hobbs*, the court rejected similar claims that the court lacked jurisdiction and found such claims to be meritless, because the defendant was properly indicted pursuant to federal law. 2012 WL2458425 (E.D.Mo. 2012). Other courts have addressed federal jurisdiction over Moorish-Americans and found Moorish-Americans to be subject to federal law. *See Bey v. Bailey*, 2010 WL 1531172 (S.D.N.Y. Apr. 15, 2010) ("the suggestion that Petitioner is entitled to ignore the laws of the State of New York by claiming membership in the "Moorish-American nation is without merit and cannot be the basis for habeas relief"); *United States v. James*, 323 F.3d 953, 954 (7th Cir. 2003) ("Laws of the United States apply to all persons within its borders."); *Allah El v. Dist. Att'y for Bronx County*, 2009 WL 3756331 (S.D.N.Y 2009) ("Petitioner's purported status as a Moorish-American citizen does not enable him to violate state and federal laws without consequence."); *Atum v. Ricigliano*, 2012 WL 3230529 (E.D.N.Y. 2012) (finding similar claims by Moorish Nationals, that they are not subject to laws, to be "meritless"). Likewise, I find that Flanagan, like any other individual found within the United States, is subject to federal laws, and he was properly indicted under federal law. Therefore, Flanagan's claim lacks merit.

### ii. Uniform Commercial Code (UCC) Claims Lack Merit

Flanagan's Petition includes several references to "ucc 1-308," "ucc1-103.6." Additionally, Flanagan also claims "common law jurisdiction," indicating that the court lacked jurisdiction. Flanagan also stated that he has "control of the trust at 28USC section3002 [sic]." In interpreting these references, I assume that Flanagan somehow believes he is preserving his common law rights

and avoiding submitting to federal jurisdiction by reference to the UCC. *See Masterson*, "Sovereign Citizens:" Fringe in the Courtroom, Vol XXX Am. Bankr.Inst. J. at 2.

"[A] search of federal case law reveals that this Code Section has been invoked by some misguided defendant's in tax-evasion cases, albeit with uniform failure." *United States v. Hobbs,* 2012 WL 2458425, at *15 (E.D. Mo. May 15, 2012) (quoting *United States v. McKinney*, 375 Fed. Appx. 479, 481-82 (6th Cir. 2010)) (citations omitted). "These arguments are patently without merit. Perhaps they would even be humorous—were the stakes not so high. To begin with, the UCC has no bearing on criminal subject matter jurisdiction." *United States v.* Hobbs, 2012 WL2458425, at *15 (quoting *United States v. Mitchell*, 405 F.Supp.2d 602 (D. Md. 2005)). Simply put, the UCC does not apply to this case and does not afford Flanagan habeas relief.

### b. The Sentence Was Not Excessive Because it Was Within the Statutory Maximum

According to Title 18, U.S.C. § 915, "Whoever, with intent to defraud within the United States, falsely assumes or pretends to be a diplomatic, consular or other official of a foreign government duly accredited as such to the United States and acts as such, or in such pretended character, demands or obtains or attempts to obtain any money, paper, document, or other thing of value, shall be fined under this title or imprisoned **not more than ten years, or both**." (emphasis added). Additionally, the claim of an excessive sentence when the sentence imposed is within the statutory maximum is not a ground for relief under 2255. *Houser v. United States,* 508 F.2d 509 (8th Cir. 1974).

The Plea Agreement, which Flanagan knowingly and voluntarily signed, specifically informed Flanagan of the maximum sentence for a violation of Title 18 U.S.C. § 915: "The maximum possible penalty provided by law for the crime which the defendant is pleading guilty [Title 18, U.S.C. Section 915] is imprisonment of not more than ten years, a fine of not more than

$250,000.00, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years." (Plea Agreement at 5).

Furthermore, during the sentencing hearing, Flanagan was advised of the maximum statutory sentence, and he indicated that he understood and accepted those terms. I engaged in the following colloquy:

> Court: You understand the maximum term of imprisonment for the charge to which you're pleading guilty is a term not to exceed ten years?
>
> Flanagan: Yes.
>
> Court: There is a maximum fine of $250,000. Do you understand that?
>
> Flanagan: I understand.
>
> Court: That you could be sentenced to the maximum term of imprisonment or assessed the maximum fine or both?
>
> Flanagan: Yes.
>
> Court: And that in addition to any term of imprisonment that may be imposed, a period of supervised release of not more than three years will also be imposed?
>
> Flanagan: Yes.
>
> Court: Is there any restitution?
>
> Counsel: No, Your Honor.
>
> Court: You will also be required to pay a special assessment in the amount of $100, which is due at the time of sentencing. Do you understand that, sir?
>
> Flanagan: Yes.
>
> Court: You understand that by pleading guilty you are subjecting yourself to the maximum penalties we just discussed?
>
> Flanagan: Yes.
>
> Court: Now, at the time of sentencing, your attorney and the United States Attorney may make recommendations about what your sentence should be, but you understand that I'm not required to follow their recommendations?

| | | |
|---|---|---|
| Flanagan: | | Yes, sir. I understand. |
| Court: | | If the sentence is more severe than the lawyers recommend or more severe than you had hoped for, that is not a reason for you to seek to withdraw your guilty plea. Do you understand that? |
| Flanagan: | | Yes. |

(Sentencing Hr'g 16-17). At sentencing, Flanagan stated that he did not object to, and accepted, the PSR findings. (Sentencing Hr'g 2). After I sentenced Flanagan to time served and three years supervised release, Flanagan did not object to the sentence imposed. (Sentencing Hr'g 8). Because Flanagan's sentence is within the statutory range and does not exceed that statutory maximum, his claim that the sentence was excessive is not cognizable under § 2255.

## C. Flanagan's Claims That the Fourth, Fifth, Sixth, and Eighth Amendment Rights Were Violated Are Meritless

Finally, Flanagan makes a series of allegations that his rights were violated. He alleges that "The fourth amendment protects my right not to be unlawfully searched or my property seized. This right was violated; when the FBI under an unlawful warrant executed under an unlawful indictment seized my flesh and blood body from the Virginia republic April 16/2013. The Fifth Amendment protects my right to life liberty and the pursuit of happiness. This right was violated by my unlawful confinement and pretrial detention. The sixth amendment protects my right to due process of law, and notice of accusation is found in the contents of the amendment. This right was violated because I never received a notice of any kind. I was just seized without due process. The eight Amendment protects my right not to be bound by excessive bail. This right was violated, because I never received an offer for bail at all [sic]." (Petition at 2).

Prisoners adjudged guilty of crime should understand that 28 U.S.C. § 2255 does not give them the right to try over again the cases in which they have been adjudged guilty. *Houser v. United States,* 508 F.2d 509, 513-14 (8th Cir. 1974). Section 2255 applies to non-jurisdictional claims based on a federal statute or rule only if the claim alleges a "fundamental defect which inherently

13

results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, U.S. 424, 428 (1962). Claims of illegal arrest, irregularities in arrest, or an improper removal from one district to another have been held not cognizable, as has a delay in bringing before a commissioner, or the excessiveness or the denial of bail. *Houser*, 508 F.2d at 514. The same decision was reached upon claims of a lack of a preliminary hearing, illegal detention prior to arraignment, and irregularities or errors in arraignment. *Id.* Challenges to the composition of a grand jury or its procedures, the failure to provide a copy of the indictment to the defendant, defects in the indictment, or the sufficiency of the indictment absent a showing of exception circumstances, where the questions raised are of large importance, the need for the remedy is apparent and the offense charged was one over which the sentencing court manifestly had no jurisdiction, are not cognizable. *Id.* at 514-15. "Merely calling the claims of Fourth, Fifth, and Sixth Amendment violations without further elaboration does not make these claims rise to the level of constitutional error. These claims are not cognizable under 28 U.S.C. § 2255." *Mosquera Estupian v. United States*, 2007 WL 2669198, at *3 (M.D. Fla., September 6, 2007).

Flanagan failed to pursue these allegations in pre-trial motions, failed to raise these claims before the Court, and failed to raise these arguments on appeal. As a result, his claims of unlawful indictment, unlawful confinement or pretrial detention, irregularity in his arrest, and lack of a bail offer are not cognizable under 2255. Furthermore his claim, that his Fourth Amendment rights were violated is not cognizable in that he is not alleging that there was a refusal to suppress evidence obtained in violation of the Fourth Amendment. *See Houser,* 508 F.2d at 517 (stating that "Denial of the right to speedy trial may be recognized as a ground for relief, as may the refusal to suppress evidence obtained in violation of the Fourth Amendment.") Even if these claims were cognizable, a plea of guilty waives all non-jurisdictional defects, including allegedly illegal searches and seizures.

14

*United States v. Johnson*, 634, F.2d 385, 386 (8th Cir. 1980). For these reasons, Flanagan's claims that his rights were violated are meritless.

### D. An Evidentiary Hearing Is Not Warranted

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo–Lopez v. United States,* 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). However, an evidentiary hearing need not be held if Flanagan's "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." *Delgado v. United States,* 162 F.3d 981, 983 (8th Cir.1998). Because the record conclusively shows that Flanagan is not entitled to relief as a matter of law, I need not hold a hearing.

### E. Certificate of Appealability

For this Court to grant a certificate of appealability, Flanagan must make a substantial showing that his constitutional right was denied. *See Cox v. Norris,* 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Id.* For the reasons set forth above, I find Flanagan has not made such a showing. As such, I will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED that** the motion of Curtis Flanagan to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED.**

**IT IS FURTHER ORDERED** that the motion for an evidentiary hearing is **DENIED.**

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Flanagan has not made a substantial showing of the denial of a federal constitutional right.

**IT IS FURTHER ORDERED** that Petitioner's "Notice of Default Judgment" [#18] is denied.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 28th day of March, 2014.